I think you've appeared before us before so you know about the time how that works. I did get some information from them. Okay just keep track here if you want to try to save any time for rebuttal keep track of it and I'll try to help you if you let me know what that is otherwise you're on your own. I will reserve three minutes for rebuttal. Okay I'll try to help you. Good afternoon your honors may it please the court my name is Noah Blackman I represent Deputy Gelhaus the appellant defendant in this important appeal. As recently stated by the Supreme Court in the white case qualified immunity is important to society as a whole because it's effectively lost if a case is erroneously permitted to go to trial. That's all very true and we're very much aware of the white case here but as you also know in Pearson there are two parts to that. The first one is to decide whether or not there has been a violation of a constitutional right in this case the use of excessive force against the requirements of the Fourth Amendment and then secondly whether there is a case or cases that are enough on point to put officer in this case officer Gelhaus on notice that what he was doing was a violation of the constitutional rights of the decedent. So in this case as I look at the Graham case and I know you're three prongs there. The first one was that it's undisputed that I'll call him Andy was not committing any crime or attempting to evade arrest. So under the circumstances we're only left with one factor to consider which is whether Andy posed and in quotes immediate threat to the safety of the officers or others. Do you agree with that? That's the only prong we're looking at in the Graham case? I don't agree with that your honor we certainly are looking at the immediate threat that is certainly the main factor that plays into this case but certainly if in fact mr. going to the first prong whether he had been committing any crime we suspected deputy Gelhaus suspected he may have been carrying a apparent AK-47 assault weapon in public which is certainly could be a misdemeanor or felony depending upon other circumstances. So from the in fact Mr. Lopez was committing that potential crime that's why the attempted detention occurred. Certainly your honor the other factor the immediate threat is really the thrust of this case. Didn't the district court decide that for purposes of summary judgment? Did they decide? In other words the district court made a determination and I will read you what the district court said. District court found that in quotes as the rifle barrel was beginning to rise and given that it started in a position where it was pointed down at the ground it could have been raised to a slightly higher level without posing any threat to the officers. In other words the district court concluded that there was no threat to officer Gelhaus based on where the gun was pointing when Andy turned. Do you remember that? Yes your honor I do and I agree that's what the district court found because based upon the undisputed evidence in the record this gentleman did turn around that's undisputed and the rifle barrel was beginning to rise. However I we disagree with the court to the extent the court did not cite any cases that stand for the proposition. That's a separate issue that's the second prong of Pearson we'll get to that but as far as the first prong is concerned as to whether there was a Fourth Amendment violation isn't it correct that unless the record clearly does not support what the district court said aren't we bound by the district court's determination that what occurred in the turning that Andy did with the gun in his left hand it did not pose a threat to officer Gelhaus. Do you agree with that? No your honor I believe that the Fourth Amendment is not violated when an officer is facing an assault weapon that is turning towards the officer and the gun barrel is beginning to raise so I believe the court the error the court made was assuming those set of facts that that was the court said was not a Fourth Amendment or excuse me was an arguable Fourth Amendment violation we disagree with that tenant because and Judge Smith you have indicated in a prior opinion United States versus Henry that in that case there was a homemade machine gun that those are dangerous and unusual weapons that are not typically possessed by law-abiding citizens for lawful purposes so when an officer in Deputy Gelhaus's position without a lot of time to react to what's going on essentially finds himself starting to stare down you know the barrel of this assault weapon the Fourth Amendment allows him to fire. Is the jury compelled to find that they were prescriptions starting to raise is pretty vague and officer Gelhaus himself testified at one point that he didn't know where the gun was pointed so would a jury be compelled to conclude that he faced a dangerous threat I mean suppose the jury concluded that that the gun wasn't being raised at all that the victim turned and faced the officers without using a second hand which ordinarily you would expect with a rifle like an AK-47 without trying to put himself in a defensive position I mean when officer Gelhaus demonstrated how he turned just turning face forward and that the shots were filed so quickly I think by the officer's testimony within three seconds from the drop the gun to the firing that Lopez wasn't necessarily doing anything other than responding to the call if a jury could find that I don't know how it could be if that's the facts as the jury viewed them how they were compelled to conclude that he in fact posed the dangerous threat let me respond to your honor first of all this is the type of weapon that can be fired with one hand there's undisputed he had his hand on the pistol grip when he turns towards the deputy if he makes any movement with that firearm under the law deadly force can be reasonable because we're talking about us in this room breaking down milliseconds from what this officer faced and so if we look at this not from the perspective of this learned discussion in the courtroom here but from this officer who's standing behind his vehicle who believes this is a actual AK-47 who called the cavalry from the department with his code 20 call and now instead of this individual dropping the gun which I would submit we would have a different case if he told the gentleman to turn around or put his hands up what he ordered him which is undisputed was drop the gun so when the gentleman doesn't drop the gun and the deputy to you I guess what I struggle with and I think it's what my colleague just mentioned we are at this point at the summary judgment stage and at the summary judgment stage if there's a conflict in testimony we have to under under the Graham case we have to take the facts that are most favorable in this case to Andy Lopez and his estate so you've got a whole series we go through them now but we won't take your time to do that we got a whole series of things where your officer said one thing another officer or another person said something different the witnesses say something else bottom line is we've got conflicting testimony and but if you take the testimony in the way that is most favorable to the estate then you've got a material conflict of fact and I guess my question to you is putting aside for a moment the question of whether there's a case on you know white versus Polly and so on isn't it clear that in this case that there are major conflicted facts here and that under the under the case law we have to construe that whatever the jury might ultimately decide if it goes to a jury but right now we have to assume that the facts are as favorable to Andy and under those circumstances couldn't a reasonable jury find that officer Gell House violated the Fourth Amendment rights of Andy Lopez by using excessive force let me respond your honor I believe that there is not material disputes in the record whether might be some conflicting information on immaterial issues such as the age of the age of the person the person was 13 this potential dispute would be could the officers perceive that as they were approaching them from behind and I don't know there's a dispute about that either they probably couldn't I guess the question is and I would ask the court what does the court think are the material disputes because when I've combed the record did the officers face a severe dangerous threat okay so the evidence on that point which is not contradicted in the record here is that mr. Lopez not contradicted in one respect because there is no victim to testify and we have authority that says we don't substitute for what the victim might have said we use caution in looking at the officer's testimony so as not to motivate officers to make sure that the victim is dead so he can't testify so we're supposed to look carefully at the officer's testimony and that's why I raised to you my concern that officer Gale house himself testified at his deposition that he didn't know where the gun was pointing that seems to me to open the door to a jury concluding you know maybe he wasn't actually looking down the barrel of a gun maybe I could conclude as a juror that the the dangerous threat that would justify the use of deadly force wasn't there I think the court is splitting hairs on that issue I don't think it splits hairs to say was the situation faced by the officers would a reasonable officer I accept that these officers perceive that but the test that we have to apply I believe is whether a reasonable officer in that circumstance would have believed the use of deadly force was justified and what a jury have to can make that conclusion no understood but the reason I said splitting hairs here is because it's clear in the record deputy gal house said and in deputy shemel as well they saw the gentleman turning around they saw the gun coming up and around at that point deadly force is appropriate the case law says they don't have to point the weapon at that point in the record deputy gal house says he's at that point looking at his sights which is how he's not looking at the hand and where the gun ended up being pointed that testimony I believe is not does not create a material dispute it's sort of red herring but your client has to say that your client said he didn't know whether the gun was being pointed at him well exactly he doesn't have to know the law doesn't have he doesn't have to wait until the guns point and he doesn't have to know where it's appointed as the court has said and judge Clifton in the in the George case the Fourth Amendment does not require officers to delay their fire until a suspect turns a weapon on them if the person is armed like in this case so suspected to be armed a furtive movement or harrowing gesture might create an immediate threat we submit that this was a harrowing gesture okay when he starts turning and the barrel starts raising which is what district court found deadly force is reasonable you wanted to save some time so it's up to you but if you're going to do that may I suggest to you and at least to me George that you referred to is right on the money in terms of all of the material elements of this case I'd be interested to know when you come back up why George is not squarely on the point and your client should have been advised as to what he could and could not do in this situation okay yes very good let's hear from the Lopez estate good afternoon your honor Gerald Peters for the Lopez estate I do want to try and be fact-specific because that is what the defense attorneys have refused to be there basically they've said there's two facts one Lopez Gellhaus yelled drop your gun Lopez turned as he turned the fake gun appeared to rise for them that's the end of the inquiry I don't think it's anywhere near that simple and there are a multitude of other facts that I may as go through first for example deputy Gellhaus never identified himself as a police officer he got out of the car he yelled drop your gun he never said police he didn't well that was the the chirping or the the brief siren and and there's disagreeing testimony between the officers as to whether Lopez turned in response to that to see whether it came from a police car if he did turn in response and presumably he could have figured out it was a police car that deputy Schemmel said that Lopez turned deputy Gellhaus did not deputy Gellhaus didn't even recall the chirping and there's no indication of any communication between Gellhaus and Schemmel in which Gellhaus would have been informed that Lopez turned further did the police they sounded their when they were on the other side of the intersection so they were approximately 120 feet away on the other side of the street chirped their siren even assuming Lopez turned around does that tell him that the police are interested in him or does that tell him the police are interested in somebody in the community we don't know and in fact in my personal if I've seen police do that just because they want people to get out of the way because they want to do you turn or notice at all I mean you're making you're making a determination that if there's no notice at all is there's a notice at least that a police car is coming and is chirping big for a reason now you say they sometimes do it for you you turn that's your point of view but there's nothing in the record that said they were chirping to do and you turn that is correct but there's also nothing in the record that Lopez would have reasonably determined that that was directed at him of course not but that wasn't the purpose of the question question was that he was aware of a police of a police car was there he was aware of a police car in the area yes yes okay well that was that was the however does not mean that he realized when several seconds later somebody yells to him from behind drop of the weapon I dropped the gun that he knows it is a police officer yelling at him oh wait a minute wait a minute wait a minute there's there's no evidence because you can't have any evidence but it isn't the normal thing for a police car to chirp and if you're in the area and somebody yells drop the gun and you're carrying what appears to what is a toy gun why can you just not include that as a part of the facts that we have to determine because I think deputy Schemmel was still required to say police officer or something to indicate it was a person in authority or alternatively he could have used the PA system from the car which would have immediately put Andy Lopez on notice it's a police officer who was calling to you this is just some unknown person I understand you can always go back on these things and say why didn't you do this and why didn't you do that and I suppose if they the best thing for him what to do is to know that that was not a toy gun we that's the problem we have we have the facts and the fact is that mr. Lopez what did understand at least it can be determined he did understand there was police around and somebody yelled at him drop the gun yes okay so he knew that but again going back to what the point I just made where there's and he turned around of course not they didn't talk about it they weren't asked the question but the question the question is the position of that I'm not trying to read into any any of these these facts I'm not arguing with you I'm just trying to understand what we have and what we have is a police car chirping and somebody yelling drop the gun right and what I am saying is I think was still required to identify himself as a police officer if he wanted compliance well that is one of the things that left out but what we're talking about is in the totality of the circumstances we have before us it might have been better if he had done that it might have been better if they had driven on it might have been better if Andy hadn't been carrying a was something to look like a gun there's a lot of might have is what we could do but we have to take the facts we have and then make a determination right but based upon if we're looking at the reasonableness of detective detective gil houses conduct if he doesn't know that Andy has responded to the police chirp and all he does is from 40 feet behind yell out drop your gun I think you can assume most people are going to go because that's the typical reaction okay you turn around to see who's yelling at you whether you have a gun or whether you don't typical reactions to turn around when somebody yells at you from behind yes okay because there are lots of facts here sure just to cut to the chase at least of what I'm hoping you can help me with I read the record I've seen the burden of proof and from my perspective at this point there are a that go to the reasonableness of the conduct here and so I have my own view as to whether the first prong is satisfied the one that always creates problems particularly the Ninth Circuit is the second one which is is there case law on point that should have put officer gal house on notice that what he did was a violation of constitutional rights in this case of Andy Lopez from my perspective the case of George versus Morris that my colleague was on seems to is actually a worst case in terms of the threat and yet our panel found that it was a violation and there was no qualified immunity are you familiar with the George versus Morris case I'm familiar with the ruling I don't have the facts in front of me that's unfortunate because that's a very important point from my I have a copy of it with me but I yeah well do you you to help us with that then but could we go back to my question that I was asking when you get to this place he's turning around and officer gal house senses that that it's really a weapon and the facts indicate the weapon begins to come up now at that point these are tragic things that happen but we have to how much more how much more would there need to be if the fact is as a district court found that he turned around and who began to raise what gal house thought was an AK does he have to wait till the first shot before he can defend himself or is there sufficient then that he can defend himself I think he has to get to the point where it is apparent that Andy has intentionally directed the weapon at him in other words until it's actually aimed at him as a person he can't pull the trigger I think if it's the demonstration was taken during a deposition he was not told to tell where the gun when he was told to tell how you turn how he turned around even indicated these having some problem with it because there's a desk in the way so he was trying to demonstrate the turning around so I'm not sure what what we get from that he wasn't asked to say how the gun was coming up but he did testify there is that was coming up now if that's true I just am wondering what more should happen assuming that gal house believes that he has an AK and he turns around and as the district court found it was coming up how much longer before he could reasonably feel he has a threat there's two issues there one is that the unchanging testimony as Andy has his left hand on the stock on the stock not on the trigger deputy gale house never says that Andy had his finger on the trigger so I think there would have to be two things one movement towards the trigger and to some volitional act bringing it up towards the deputies as perhaps a natural event that occurs if you turn you've got something in your hand it may tend to swing a bit well I know what we think happened doesn't help us any now you're saying unless he can actually see the finger on the trigger that he is not entitled to it but can join the trigger now in this case is there any evidence one way or the other whether his finger was or was not moving there is no evidence that his finger was ever moving or not moving every time that deputy gale house was asked he said Andy's hand was on the stock so if so if assuming he has an AK really it's not Andy it's somebody else has an AK and moving towards the police officer hand on the stock he can't defend himself till he sees him move towards the trigger that millisecond he has to wait right I think that's more than a millisecond to move your hand from the stock on to the trigger I think okay second okay and he has to wait that second before he can defend himself let me go back in a case like this in which the police have not identified themselves as police and which no warning has been given saying drop the gun or we will shoot or stay there or as Andy is turning they just said drop the gun this has dropped the gun with no indication of consequences or as Andy is turning he doesn't say stop put the gun down and he waits until Andy gets all the way turned around like this and then shoots him without any further warning then yeah I think that he had to wait under those facts because Andy was never given an opportunity to comply with the direction is that what the case law requires I guess law requires if possible an opportunity to comply yes I'm not familiar with any cases that says let's say that the officer has to warn number one I'm a police officer and unless you do this I'm going to do whatever it isn't an absolute but it is referred if possible if possible the police should warn or identify themselves I'm frankly amazed that I think you got a very strong case in terms of the facts that you're not arguing it my able colleague is led you down the primrose path I have to respond to his questions your honor and I understand that but you've got a whole bunch of material facts here where you've got at least two different stories the the burden I mean when there is a when you have summary judgment you have to believe your client's story and those are the kinds of things that go to juries and you haven't argued that well you're not why because I've been responding to the question facility there's plenty of plenty of facts which including the fact that the police officers are on routine patrol there is no 9-1-1 call and he's just walking normally he doesn't attempt to evade them at any time he responded that's all true but as my colleague has pointed out police officers looking at totality of the circumstances they're entitled to defend themselves they don't have to get shot they don't have to wait for any particular period of time the question is what are the facts and in this case the facts vary you got one person saying one thing somebody else and something else and at least from my judgment at least six material facts and under those circumstances isn't it correct that when you have that kind of thing we have to assume that the facts are as they would be in the in the light most favorable to your client which would then lead to remand to the district court for purposes of having a trial yes your honor we have third-party witnesses saying that Andy was a kid we have third-party witnesses saying they thought the gun was fake that we have third-party witnesses saying they did not feel threatened by Andy all of those things plus in addition we have police officers saying they didn't know how old Andy was what the question is I was gonna I was gonna respond to that at the moment in which deputy gill house starts shooting at Andy Andy is facing directly at him from a distance of approximately 65 feet so from this basically the distance from where you were sitting to perhaps the back of this courtroom and the question is can you tell the difference between a 13 year old and let's say does it matter if the guy's gonna kill you I mean there are plenty of people that are very young we've had nine year old cases where people are killing police officers so it's not the age that's the factor here is it I think it is I think it's much more likely if the kid is 13 years old rather than 17 18 19 years old that he's not going to do anything that it is indeed a toy so yes I think it makes an enormous difference if they're if their position is the deputy's position is we couldn't tell how old he was but in fact before at the moment before deputy gill house shot Andy he could tell how old he and there's a fact that goes with that as well which is the accident reconstruction is the defendant's accident reconstructions in attempts to come up with a sequence of shooting and his reconstruction is this is mr. Shattuck I'm giving counsel you're you're over your time let me just ask my colleagues if either has questions additional questions yes I just wonder what should we what should in trying to determine the situation of the issue before us what weight should we give to the area that this episode took place and the apparent fact that officer gill house has encountered people with a case in that very area and had contact with them officially I think we have insufficient information to give it any weight has he seen people walking around in the middle of the day carrying an ak-17 has he seen people but we are asking me questions and I don't know what the answer is my question is a simple one if the if the evidence is that it's in an area where there has been problems and officer gill house has in that very area encountered people with a case how can that be also considered in the makeup of his reaction at that time without additional information no and that's and that's because they're completely irrelevant as you see it it's irrelevant unless it's a situation in which he saw somebody walking at normal speed in the community that isn't what I am concerned about and he can't put that into the mix if I understand your argument I'm saying just mere knowledge that there have been ak-17s in the community now that isn't the question I ask I ask it can it be put into the mix of the situation that officer gill house is in can he consider that as part of the of the way creation of whether or not he's got a serious problem here I think is a very very very weak element which is vastly overborne by the other elements that are in dispute okay I love you I understand your answer okay thank you for your argument counsel the county and after gill house as counsel has just about two and a half minutes try to be as quick as I can to respond to your question judge Smith I believe George's is distinguishable that was a 64 year old man in his own house in his backyard had not committed any crimes holding a weapon there was a clear dispute as to whether or not this man with the weapon and a walker I I agree that but that doesn't help you that doesn't help you it was far more it was far more serious in the officers perspective and the court found that there was no qualified immunity because there was a disputed testimony about whether he raised the gun to point it at the man that shot him there was a dispute and then it seems to me that George hurts you because it's far more serious it's a domestic relations kind of thing older man senile etc etc and yet there was no qualified immunity I disagree your honor because in our situation we have an assault weapon that can fire you know up to 30 rounds very quickly what I think our case is more akin to is your honor's opinion that your honor was involved in the CV versus City of Anaheim case where there was some factual issues as to whether or not this gentleman whether he had the shotgun whether he reached for the barrel whether he this was sort of a reaching the shotgun type of case and the court said that qualified immunity was appropriate in that case I also because of time I'm trying to move through this more quickly I think our case there's other cases where courts have found qualified immunity or deadly force is justified when simply people are reaching for an area when there may be a weapon either known to be there or even suspected to be there I would submit our case is a lot more dire from the perspective of this officer he had milliseconds to make this decision he gave the command the command was not followed he did if you don't believe the district court that he wasn't being threatened the district court found he wasn't well that's why we have de novo review and learning court to look at these issues because there's no way we can tell law enforcement out there that they are not threatened when they are facing an individual with a suspected review we have to look at what the record shows could you could you finish your sentence thank you when we have an officer who's looking at an individual who's turning towards him with this officers don't have to define the biomechanical nature of this thing we can certainly not be that finite we need to provide clear guidance to these officers at a minimum this case compels qualified immunity because there's no case in front of the court that indicates what detective see me what he did was clearly unlawful beyond all your position is regardless of what happened at the accident that there's no law before the accident which would warn him that this action could cause liability that's correct your honor and there's a ton of cases that show what deputy gale house did was comported with the fourth amendment there was situations that were less dangerous or courts have found appropriate deadly force or qualified immunity this case there was a significant we're talking about a three-second period here that we're analyzing essentially from the drop your gun to the gunshots so I submit that this is of the extreme emergency deadly situation that this if you're saying that George Harris and Kerr now don't give your client full knowledge that what he did was improper that's correct what are your cases that you say are exactly on point well that's that's the thing there is no case definitely on point I think white the white court says if there's if you have a unique set of facts and circumstances which is what I believe we have here then serious it's a you think this is unique we get these terrible cases all the time these kids being killed with artificial guns this is not unique that's the problem and the question is whether some of these other cases and we have disputed facts are enough to apply qualified immunity when the law is not clear so I'm having trouble with what you're saying frankly because there is no license for police to kill teenagers with three seconds when even that officer says that the gun was not pointing at him or we're not even coming up to point at him and others say the same thing that's not the law what is your strongest case to support your position that that that the the officer guilt house was not warned by prior cases I will answer that question in one second your honor I agree with judge Smith this is a more of a social issue but to take deputy gale house should not bear the brunt of that social issue from my in my social issue it's a legal issue well they have a right to kill this boy under the circumstances nobody knew he was a I mean there's it's not material and nobody knew his person unfortunately to answer your question judge Wallace thank you the Kenyon case is an 11th Circuit case a recent case where a per the commands of officers who told them to to walk towards them or something instead he takes a couple steps just towards the gun deadly force was used in that situation it was found to be lawful there's several cases we cited in the fourth circuit individuals are reaching for supposed weapons deadly force is appropriate in in this situation we don't have somebody reaching for a supposed weapon we have an individual who is holding what appears to be an assault weapon that is moving so I would submit that there's cases that are less dire where qualified immunity was provided or the courts have determined it was not a fourth amendment violation any other questions by my colleague all right thank you very much for you all counsel the case just argued is submitted and the court stands adjourned
judges: Wallace, Clifton, M. Smith